The next case on the calendar, Giussani v. Monini. Good morning, your honors, and may it please the court. Josh Ireson of Bursar and Fisher for the appellants. I've saved two minutes for rebuttal. The appellants in this case are consumers who purchased Monini white truffle-flavored extra virgin olive oil, believing that this product was made with truffles. But this product is not made with truffles. It's made with something called 2,4-dithiopentane, a petroleum-based synthetically produced chemical that imitates the taste of truffles, but is entirely artificial. And the district court dismissed appellants' claims in this case based on its view that a reasonable consumer would not be misled into believing that this product was made with truffles. But that was a fundamental error that requires reversal, because as courts widely recognize, whether a reasonable consumer would be misled is almost always an issue of fact that should not be decided at the pleading stage. And the narrow exception to that rule is when it's entirely implausible that a reasonable consumer would be deceived. And the classic example of that exception is a case called Vedetto v. Kellogg, in which a plaintiff claimed that he was misled into believing that Froot Loops was made with real fruit. And in that case, the court rightly held that the claims were not plausible. It was just one of those well-known facts of life that there are no fruit in Froot Loops, and that's particularly obvious given that fruit in Froot Loops is spelled F-R-O-O-T. But this is a very different case. This is not about a highly processed, sugary children's cereal with neon colors. We're talking about a prized gourmet delicacy, a premium culinary good, and consumers set their expectations accordingly. Here, it's entirely plausible that a reasonable consumer would interpret this package as meaning that the product was made with truffles. The words white truffle appear in large lettering that dominate the rest of the label. There's then a big picture of a truffle right here in the middle of the packaging. Now, under that, it says flavored extra virgin olive oil. And the district court apparently was of the view that flavored here can only mean flavored like. But it's our view that it's just as plausible, if not more plausible, that a reasonable consumer would interpret flavored here to mean flavored with. And I think that's particularly true given that we're talking about an olive oil here. Olive oils are often. I have an argument that the list of ingredients also plays into the picture, and it does not list white truffles. That's correct. The district court relied on the ingredient list, and I think that was mistaken for two reasons. Was it mistaken to rely on the ingredients list? No. The consumers, there's no allegation that the consumers here relied on the ingredient list. It was mistaken for the court to say that the ingredient list required dismissal here. Because, first of all, there's case law that says consumers are entitled to rely on the front packaging alone. You don't have to go to the ingredient list to find out if there are misrepresentations in the front packaging. But even apart from that, the ingredient list here doesn't clarify anything. The ingredient list is extra virgin olive oil, 98%, and aroma, 2%. And aroma is not defined anywhere. It doesn't say artificial truffle aroma. It doesn't say 2,4-dithiopentane. There's no inkling anywhere in this packaging that aroma is fake truffle flavoring. Is there any case law at all with respect to aroma and what a reasonable consumer understands the word aroma to mean? I have not seen any case law on how a reasonable consumer would interpret aroma. But I think that given the facts of this case and the allegations here, a reasonable consumer, even if they did look at the ingredient list, would interpret that in context of the rest of the packaging where it says white truffle in large lettering and it has the big picture here. And they would most likely understand aroma to mean something that was actually made from truffles. And, in fact, in our complaint, this is in 813 of the appendix, we specifically say that companies who are using 2,4-dithiopentane, fake truffle aroma, use the word aroma to purposefully mask the fact that they're not using actual truffles. And so because a reasonable consumer doesn't know what aroma is, the ingredient list doesn't clarify anything here. It's not exactly transparent. Rather, it just adds to the ambiguity. And so in the Frito-Lay case— But wouldn't the reasonable consumer think that if it doesn't list white truffles, there can't be any in there? In other words, if there were white truffles, wouldn't that be listed? And wouldn't a reasonable consumer think that? Well, the biggest word in this whole packaging is white truffle. It says on the side white truffle. Flavored. Yeah, but flavored can be flavored with. Aroma, a reasonable consumer looking at aroma would probably think this is something made from white truffles. It's truffle perfume, or it's something made through steam distillation from an actual truffle. If they wanted to be clear that this was artificial truffle aroma, there's ways to say that. There are many types of foods that say that they're artificially flavored when they are artificially flavored. And so a reasonable consumer, seeing that it doesn't say artificially flavored anywhere on this packaging, would understand that, in fact, it's most likely naturally flavored. Would this be a different case, in your view, if the side of the bottle didn't omit flavored? In other words, the side of the bottle is a strong argument for you, right? Because it says white truffle, extra virgin olive oil, or black truffle, extra virgin olive oil. And you're saying that, in part, you're saying that because the side doesn't say flavored, there is certainly some ambiguity, even if one looks at flavored in the other part of the bottle. If flavored was on the side of the bottle, would this be a different case? I think, obviously, it helps that it doesn't say flavored on the side, but I don't think that's the turning point here. I think flavored on its own can often mean flavored with. I think flavored is somewhat ambiguous because it can mean flavored like or flavored with. And if you looked at Monini's own line of truffle, own line of olive oil, it follows suit. Monini basil-flavored olive oil is made with basil. Monini porcini-flavored olive oil is made with porcini. Monini rosemary-flavored olive oil is made with rosemary. And so flavored can mean flavored like or flavored with. And even if it only meant flavored like, what's the most obvious way to make something truffle-flavored? It's to use actual truffles. Let me ask you about the Magnuson Moss Warranty Act. Yes. My understanding is, and correct me if I'm misunderstanding, that all the individual claims here are below $25, right? I don't know if this always sells for below $25. In the complaint, we say $20, but I understand the Magnuson Moss. Under Magnuson Moss, it's got to be $25 or more, right? Well, there's also case law saying that Magnuson Moss claims rise and fall with state warranty claims under express warranty or implied warranty, regardless of the price. But in any event, I think that's probably something that should be decided by the district court in the first instance, given that we have . . . With respect to the class action, you need to have 100 named plaintiffs, right, under Section 2310D. And there aren't 110, right? I'm sure there are over 100 people who have purchased this. I don't think we need 110 named plaintiffs. I'm out of time, so I'll reserve that for two minutes. Good morning. May it please the Court. Jeff Warshawski for the Appellee Monini North America, Inc., and with me is my colleague, Larry Weinstein. I want to focus my argument on responding to the arguments you've just heard in taking Your Honor's questions, but let me make a couple points at the outset. First is that it is well settled that a court may determine, as a matter of law, that an allegedly deceptive advertisement would not have misled a reasonable consumer. Those were this Court's words in Fink v. Time Warner. And every claim in this action is governed by the reasonable consumer standard. That's undisputed on this appeal. The other point I'd like to make at the outset is to remind the Court exactly how the two plaintiffs in this case alleged that they were deceived. They alleged that they were deceived in the complaint by the words white truffle and a picture of a truffle on the label. And as we explained in our brief, that is not a reasonable takeaway from the label because the label actually says that the product is white truffle flavored and the ingredient list does not reflect that truffles are an ingredient. I want to turn now to addressing the side. What about the side? That's exactly what I was going to turn to. The side doesn't say flavored. So one thing I would note, it seemed like perhaps appellants were backing away from this argument and there's a reason why they're doing that. And the reason, there's actually two reasons. One is that they did not raise this argument below. They didn't even raise it in their opening brief on this appeal. Whether that's because they hadn't noticed the language before or they didn't think it was misleading, either way they've waived the argument. But there's also another fundamental threshold reason why these plaintiffs can't make that argument. And that is because they do not allege in the complaint that they ever saw that language on the side label. So they cannot plausibly establish that they, the two plaintiffs in the case, were deceived by that language if they never even saw it in the first place. I'm also happy to accept. What about the language highly, highly esteemed by connoisseurs? Let me address that in one second. I was just going to add, we vigorously dispute also that the side label language would mislead a reasonable consumer. And if Your Honor is interested, I'm happy to explain that. But otherwise, I'll turn to what you were just mentioning. Sure. So the language about highly esteemed is talking about this being a flavor that is highly esteemed. By connoisseurs. Right. That could reinforce to the reasonable consumer an understanding that the product is infused with actual truffles. Not in the absence of an affirmative statement that the product is talking about ingredients. And again, the appellants do not allege that they even saw this side label, let alone that the highly esteemed language was referring to that. So I don't think we need to go down that road. Why use the word aroma unless one is trying to disguise the fact that artificial chemicals are being used? One point I think got a little mangled in the briefing is we don't concede, and we have not conceded that the flavoring is artificial. The situation is a little bit more complex than they make it seem. Many products do not say artificial, contains artificial flavors on the label, and yet do not contain the food item that it tastes like. And we cite plenty of examples of these cases in our brief. I think a better example than the Vedetto case is the McInnis versus General Mills case. And that product was called Berry Berry Kicks, which I would note that name sort of follows the same formula as the side label we were just talking about. And on that label there were pictures of berries, and it didn't say anywhere that it was artificially flavored. It actually said natural fruit flavors, and that's what it said on the ingredient list. So these sorts of terms are fairly common. And again, just because something isn't artificial doesn't mean that it contains the food item that it tastes like. And I would also note on the aroma point, the appellants do not allege that they even looked at the ingredient list. My opponent here just conceded that. And they have never alleged in the complaint, and they did not argue below, that the word aroma was hard to understand. And as Judge Chin correctly noted, what is important here about the ingredient list is what is not listed there. And that is truffles. This is not a complicated ingredient list. There are just two ingredients. And in similar cases that we've cited, including the McInnis case and others, courts have held, and these are far more complicated labels with many, many different ingredients listed, courts have held that the absence of fruit or other ingredients is something that a reasonable consumer would take note of. So in this situation, a reasonable consumer would take note of the absence of the word aroma. Another point I'd like to address is the word flavored and what that reasonably means. It is not a reasonable interpretation of the word flavored to mean that the product contains truffles. And indeed, in a decision that we submitted with our 28-J letter from Judge Schofield of the Southern District of New York, she rejected that argument head on. And she stated in that opinion that reasonable consumers are not so naive as to believe that including actual X in the product is the only way to make the product X flavored. And she rejected a similar argument about Trader Joe's saying that some of their products were flavored, like the argument you just heard about how some of Monini's products say that they are basil or rosemary flavored. And I would just point out, on those products as well, Monini is only making a claim about flavor, not ingredients. Some of Monini's products in its flavored olive oil line do contain the product that characterizes the flavor, and some don't. In addition to the truffle flavored olive oil, there's a pizza flavored olive oil, for example, that does not contain pizza. And how do their ingredients lists list those things? Right. If it contains basil, it will say basil. If it contains rosemary, it will say rosemary. When they don't contain pizza, it doesn't say pizza. When it doesn't contain truffles, it doesn't say truffles. And that is not hard for a consumer to understand, particularly when we're dealing with the truffle, which, as the complaint alleges, is a prized delicacy and actually the most expensive food item in the world that costs hundreds or even thousands of dollars per ounce. And in the cereal cases and the juice cases that I was talking about, courts had little difficulty finding that the absence of the word fruit on the ingredient list sufficed to put a reasonable consumer on notice of fruit's absence in the product. And now we're talking about truffles. And if a product contains truffles, it surely is going to say so. Failing to say on a product that contains truffles that it contains truffles would be marketing malpractice on the order of describing a diamond engagement ring as a ring with gemstone. It's implausible that anybody would ever do that. And consumers are savvy enough to know that the absence of truffles on an ingredient list means that it does not contain truffles. Do we have in the record what the comparative costs are for a bottle? Compared to what? Well, like Williams-Sonoma, for example, sells a branded bottle. This is not in the record, but just looking. You can correct me. For $24.95, right? A flavored olive oil that tastes like? No, a white truffle infused olive oil. And I don't know if that product. That's not hundreds of dollars in difference between the two products. I'm not familiar with that product. As Your Honor noted, that's not in the record. Based on my research. You are giving the sense that there's a huge gap between the two in price. Sure. I don't know that product does contain truffles. Plaintiff's counsel has sued other manufacturers who have said those very words, truffle infused, on their label when it wasn't true. So I don't know about that Williams-Sonoma product. If we're going to go outside the record, I would represent to Your Honor that I've looked into this. I was curious. And olive oil that contains truffles, and that is very clear that it contains truffles, costs nine or ten times more per ounce than Monini's product. As Your Honor noted, though, none of this is in the record. What is in the record, though, is the relatively low price of Monini's product and the allegations in the complaint that truffles are extremely expensive. Indeed, that they cost hundreds or even thousands of dollars per ounce. I believe that's paragraph 24 of the complaint. And that price is not consistent with the notion that this product contains truffles. Again, that's just another indicia. The first point is that there is nothing in the first place about this label that affirmatively claims that the product contains truffles. Then, even if there were some question about it, a reasonable consumer, and this is what the case law holds, a reasonable consumer knows exactly where to look to answer that question, and that is, of course, the ingredient list. Price is something that I think would come into that when you're standing at the point of purchase and should influence a reasonable consumer. What does aroma mean? What does aroma mean? We do not dispute that it is referring to 2,4-dithiopentane. As I noted, we do not concede that the 2,4-dithiopentane in Monini's product is artificial. As the complaint actually acknowledges, it is a naturally occurring chemical that, in fact, occurs in truffles and gives them their distinct taste and smell. So aroma is referring to that flavoring compound that comes from truffles. The last point I'll mention in light of the time is I think my opponent mentioned the Williams case, and I just want to clarify the holding there. What Williams held was not that courts should disregard the ingredient list in analyzing the reasonable takeaway to a consumer. What Williams held was that if you make an affirmative representation on your label that your product contains an ingredient, and in Williams the representations were that it was fruit juice snack and that it was made with real fruit juice, then you can't contradict that through a disclaimer or other language like an ingredient list elsewhere on the package. But it is well settled under this Court's precedent and under district court cases that we cite on food labels that if there's something potentially ambiguous about a label, then it is reasonable, it's expected that a reasonable consumer would take note of clarifying language in the form of a disclaimer or an ingredient list. Thank you. Just a quick question. As I understand it, in your brief before the district court, you challenged plaintiff standing to bring claims involving black truffle oil. Because they never purchased it. Indeed, it wasn't even on the market when they bought their product. Is that an argument you're making on appeal? We have not made that on appeal. We wanted to streamline the issues, and we feel very confident in the reasonable consumer argument. We did make a couple additional ancillary arguments, including on Magnus and Moss and a few other points. So you're conceding for purposes of this appeal that they do have standing. Right. We wouldn't concede that below. We might revisit it. That's correct. I just wanted to be sure about that. Thank you. Two quick points. First of all, on price, we actually allege that this product was sold at a significant price premium over plain olive oil. This is at A8 and A9 of the appendix. We say that an 8.5 fluid ounce bottle of plain olive oil sells for $3.78, whereas Monini truffle oil sells for $20.95, which is actually five times higher. And it's a pretty big difference. I think to a reasonable consumer, it would be hard to imagine what would justify that big price difference, other than the actual inclusion of truffles. And finally, I just want to bring to the Court's attention a recent case from the Southern District of California earlier this year called Allred v. Kellogg that I think would be helpful because it raises many of the same issues here. In that case, the plaintiffs had purchased salt and vinegar flavored potato crisps, and they claimed that they were misled into believing that the product was made with real salt and vinegar when it was actually flavored with malic acid and some other ingredients. And in that case, the defendants moved to dismiss and made all the same arguments we've seen here, including that the labeling statement was true because it actually was flavored like salt and vinegar, even though it was flavored with other products that were cheaper and meant to mimic salt and vinegar. And the district court there denied the motion. It noted that whether a reasonable consumer was deceived is a question of fact. That's not appropriate to be decided on an MTD in most cases. And then in that case, a reasonable consumer could construe the packaging as depicting a product that was actually flavored with salt and vinegar. First and foremost, it said salt and vinegar flavored, which indicated the use of salt and vinegar. And then there was a picture of salt being sprinkled on the crisps and two bottles that looked like vinegar bottles. And the court said that that was sufficient and denied the motion to dismiss. Now, the facts of the present case, I think, are quite obviously similar. And in our view, the same result should have been reached in this matter as well. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision.